IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC ANTHONY RONEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 00-HGD-0282-S |
| | ) |
| OFFICER FOSTER, Jailer; | ) |
| JAMES JONES, Deputy Sheriff; | ) |
| LIEUTENANT SMITHERMAN; and | ) |
| CAPTAIN WATTS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION

Eric Anthony Roney, hereinafter referred to as plaintiff, has filed an amended *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration in the Shelby County Jail. Plaintiff is now incarcerated at Bibb County Correctional Facility in Brent, Alabama. In his amended complaint, plaintiff names as defendants Officer Foster, Lieutenant Smitherman, and Captain Watts. He seeks monetary damages.[1] In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The magistrate judge entered an Order for Special Report (Document #22) directing that copies of the complaint in this action be forwarded to defendants Foster, Smitherman, and Watts,

---

[1] Plaintiff also named Captain Webb and Deputy Jones as defendants, and sought injunctive relief in his amended complaint. In report and recommendation entered September 29, 2000, the magistrate judge recommended that all claims against Captain Webb and Deputy Jones be dismissed. The magistrate judge further noted that the plaintiff's request for injunctive relief had been rendered moot as a result of his transfer to another correctional facility. On November 28, 2000, the district judge adopted the report and recommendation of the magistrate judge, and dismissed all claims against defendants Webb and Jones pursuant to 28 U.S.C. 1915A(b)(1).

requesting that they file a special report addressing the factual allegations of the plaintiff's complaint. The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

Each defendant filed a special report (Document #28, #29, and #30) accompanied by affidavits and pertinent documents. Plaintiff was thereafter notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff filed a response (Document #32 and #33).

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party

to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## FACTUAL ALLEGATIONS

*Plaintiff's Complaint*

In his amended complaint, plaintiff states that on or about December 14 of an unspecified year which appears to have been 1999, he became "very sick." Amended Complaint (Document #17) at 3. Plaintiff contacted Officer Foster, who said that he would contact the shift supervisor and get back to plaintiff. Approximately fifteen minutes later, plaintiff "pass[ed] out from cold wets and very sickness [sic]." *Id.* at 4. After regaining consciousness, plaintiff asked Officer Foster "about [him] seeing [the] nurse concern[ing] [his] condition," but Officer Foster refused his request. *Id.* The next morning at approximately 4:45 a.m., plaintiff passed out again and "wasn't able to return to his f[eet] from weakness and dizzy [sic]." When plaintiff used the bathroom, he noticed blood in his stool.

Plaintiff sent a request form to Captain Watts concerning his "medical condition" and was called to Captain Watts' office later that morning. *Id.* at 5. Plaintiff "explain[ed] to Captain Watts what [Officer Foster had] done." *Id.* Captain Watts then contacted the nurse. While plaintiff states that he "was refuse[d] by [the] nurse," who is not named as a defendant in this action, he also stated that he "was place[d] on medication and was never check[ed] once for [his] problems." *Id.*

The next day, Officer Foster began to verbally harass and threaten plaintiff. Plaintiff complained several times to Captain Watts, who eventually sent plaintiff to speak with Lieutenant Smitherman about the matter. According to plaintiff, Lieutenant Smitherman "refuse[d to] listen" to him, saying, "This is [the] Shelby County Jail and we run it the way we wants to [sic]." *Id.* Plaintiff again contacted Captain Watts about Officer Foster's behavior, but was told to leave the office. Plaintiff states that, on December 24, Officer Foster attacked him "by beat[ing him] with

his fist and putting his knee into [plaintiff's] back very hard." *Id.* He states that Officer Foster then placed him in handcuffs and legcuffs and left him in a lock-up cell for hours.

*Defendant Foster's Special Report*

Defendant Foster attests that plaintiff was a problem inmate at Shelby County Jail from his arrest in November 1, 1999 to his release on May 4, 2000. (Document # 28, at 1 & 3). He relates,

> "[On] December 24, 1999, around 7:45 p.m., I was on duty [as a corrections officer] at the Shelby County Jail when inmate Eric Roney started beating on a plexiglass window in the day room of the lower yellow cell block . . . .It appeared to me that inmate Roney was trying to get the attention of Corrections Officer Terry Gowers. Officer Gowers motioned for inmate Roney to hold on a for a second because he was doing something else. Inmate Roney did not stop pounding on the plexiglass window. Instead, he started beating on the plexiglass window harder.
>
> Corrections Officer Gowers and I met with inmate Roney outside the lower yellow cell block. Officer Gowers told inmate Roney that he was going to be given some 'lock down' time for his actions and conduct. A prisoner is given lock down time for misbehavior. When a prisoner is in a lock down cell, he cannot use the telephone, receive merchandise from the store, or receive visitors.
>
> When Officer Gowers told inmate Roney that he was going to receive some lock down time, Mr. Roney became very irate and started yelling and cursing the officers present. In addition, inmate Roney refused to pack his belongings and go to the lock down cell. Accordingly, Officer Terry Gowers, Officer Ronny Brown, Officer Allen Thompson, and Deputy Mike Shaw, and I escorted Mr. Roney to his cell.
>
> While in his cell, Mr. Roney continued to yell, curse and threaten the officers present. We left his cell to given him some time to calm down. However, Mr. Roney started beating on the plexiglass window in his cell and finally succeeded in knocking out the frame that surrounds the plexiglass window. At that point, Mr. Roney was physically restrained for his own protection as well as the protection of the officers and deputies present. In my opinion, only reasonable and necessary force was used to restrain inmate Roney.
>
> At no time while Mr. Eric Roney was [a]n inmate in the Shelby County Jail did I ever subject him to excessive force. In addition, at no time did I ever deny Mr. Roney adequate medical care. . . . The Shelby County Commission contracts with NaphCare in Birmingham for the medical care of its inmates. A nurse is on duty five days per week and is on call 24 hours a day. A medical doctor visits the Shelby County Jail one time per week unless more visits are necessary. In case of an emergency, an inmate is taken to the emergency department of the Shelby Baptist Medical Center.
>
> Our records indicate that Mr. Roney was seen by the healthcare providers on a number of occasions while incarcerated in the Shelby County Jail."

*Id.* at 1-4.

5

*Defendant Watts' and Smitherman's Special Reports*

The special reports of defendants Watts and Smitherman are identical. (Document # 29 and #30). These defendants also state that the plaintiff was a problem inmate while he was incarcerated at the Shelby County Jail, admit that the plaintiff was involved in an altercation with defendant Foster on December 24, 1999, and agree with defendant Foster's version of health care services available to inmates at the jail. (*Id*, at 1-2). Moreover, both defendants write, "At no time while Mr. Eric Roney was an inmate in the Shelby County Jail was he subjected to excessive force or denied adequate medical care." *Id.* Watts and Smitherman refer to the affidavit of defendant Foster to support their assertions regarding lack of excessive force and attach a copy of the record of plaintiff's medical care while he was incarcerated at Shelby County Jail as evidence that plaintiff was treated for his medical condition(s). Said record tends to show the following:

| Date | Complaint | Treatment |
|---|---|---|
| 11/10/99 | Stomach pain from ulcers | Nurse examined and upon notification, physician prescribed an antacid. |
| 12/20/99 | Plaintiff told the nurse that a bone came out of his rectum and that he was in need of hemorrhoid surgery. | Referred by defendant Watts. Nurse examined the plaintiff and saw no external hemorrhoids. Upon notification, physician ordered the plaintiff prescriptions for Keflex, Tylenol and Anusal. |
| 12/23/99 | Plaintiff requests to speak with a mental health doctor about problems he is experiencing. | Nurse gave plaintiff a mental health care form. |
| 1/3/00 | Chest pain. Plaintiff previously believed the problem was simply gas. However, he began experiencing numbness in three fingers and back pain. | An EKG reveals a normal sinus rhythm. The physician noted the plaintiff wanted a change in bed assignment and phone privileges. Wrote that the plaintiff had security issues. |

| | | |
|---|---|---|
| 1/10/00 | Upper chest and back pain. | Examined by physician and given prescription for Tylenol and Benadryl. |
| 2/16/00 | None. | A complete physical examination revealed no health problems. |
| 3/23/00 | Rectal bleeding and an anal knot. | Examined by physician who determined plaintiff was suffering from an internal hemorrhoid. Plaintiff was given a prescription for Anusol and Colace. |
| 4/6/00 | Nerves. Also, upset that he was handcuffed because it embarrassed him in front of other prisoners, feels that the officers harass him and treat him differently than other prisoners. | Examined by physician. |
| 4/25/00 | Chest cold, head cold and an allergic reaction to soap. | 4/26/00 Examined by nurse who noted some redness and chaffing. Plaintiff instructed to discontinue use of Noxzema soap, and apply coal compresses and lotion to his face. Prescription for Tylenol and allergy medication given. Same on 4/28/00. |
| 5/1/00 | None. | Nurse notes Noxzema "caked" all over the plaintiff's face at pill call, and tells him to discontinue use of Noxema. |

(*Id.* at Exhibit A and p. 2-5).

7

*Plaintiff's response*

Plaintiff contends that he "became a problem for the jail officials [at] the Shelby County Jail. . . . after I was denied medical attention from Officer Foster." (Document # 32, at 1). I became very ill and wasn't able to stand on my feet. I contacted Mr. Foster and I explained to him my condition. He stated to me at that time he would contact his supervisor, and [that he would] be right back." Officer Foster never returned. *Id.* at 2. Later, the plaintiff stated that he again contacted Foster to let Foster know that he was very ill, however, Foster told the plaintiff there was nothing he could do except keep the plaintiff in his cell. *Id.* Plaintiff states that he "suffered from bad pains, and cold sweats for hours." *Id.* A few days later, he was able to communicate his need for medical attention to Mr. Watts. *Id.* At that time, plaintiff was examined by a nurse. *Id.*

Plaintiff contends the next day Officer Foster approached him, asked why the plaintiff had complained about Foster to the Captain, and stated that the plaintiff was "gonna pay for that." *Id.* Immediately, plaintiff submitted a request form to Captain Watts about Foster's threat. *Id.* In response, Watts told the plaintiff to proceed to Lt. Smitherman's officer, where the plaintiff was told, "[T]his is Shelby County and they run it like they want[,] and for me to return to my cell, and he don't (sic) want to hear nothing else from me." *Id.*

Plaintiff argues that on December 24, 1999, he simply "knocked on the window" of his cell in order to get the attention of another officer. *Id.* at 3. "At this time, Officer Foster rush[ed] into the cell, telling me to get my s - - t." *Id.* The plaintiff asked why he was given said order, but Foster refused to answer and began forcing the plaintiff into the rear cell. *Id.* Plaintiff began to ask for help while defendant Foster forced the plaintiff "to the ground," and placed his "knee into [the plaintiff's] back very, very, hard" as he put the plaintiff into the rear cell. *Id.* Plaintiff states that Foster, "beat

8

me and left me hogtied for hours . . . and hours. [Foster] later said[, 'I told you,] and have a Merry X-Mas.'" *Id.* In a second response filed simultaneously with his opposition to the defendant's motion for summary judgment, the plaintiff also complains that Watts and Smitherman were unprofessional and inconsiderate "of [his] safety," and that he "was put in a situation in which I felt like I had to do something to their attention so I can get some help." (Document # 33).

## EIGHTH AMENDMENT

Denial of Medical Care

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct 285, 50 L.Ed.2d 251 (1976). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated in *Estelle, supra*, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980). Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). *See also Estelle v. Gamble, supra*, at 106-08.

A jail official violates a convicted person's Eighth Amendment protection against cruel and unusual punishment if he acts with deliberate indifference to the serious medical needs of the inmate. *See, e.g., Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988)(citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)). Specifically, an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994) ("[K]nowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference."); *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988)("[W]ith evidence of knowledge [of the prisoner's need for medical care] the jury could have concluded that the failure to provide Carswell with medical care constituted deliberate indifference."); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[K]nowledge for the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference").

The standard for deliberate indifference focuses on the failure to provide or allow proper treatment in the face of information which reasonably should compel action. Such deliberate indifference is often manifest by a refusal to act when certain actions were or should have been known to be necessary, rather than simply a failure to act. *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir.), *vacated*, 931 F.2d 711 (11th Cir. 1991), *reinstated by unpublished order* (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191(11th Cir. 1994)

An official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186 ("cases

stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem"); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994) (sheriff was not entitled to qualified immunity where he intentionally delayed treatment that sheriff knew had been prescribed for inmate's serious medical needs); *Thomas,* 847 F.2d at 773 (failure to provide prompt attention to serious medical needs by delaying medical treatment for non-medical reasons constitutes deliberate indifference). Delay in access to medical treatment can violate the Eighth Amendment, *Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,'" *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir) *per curiam*, *cert. denied*, 496 U.S. 928, 110 S. Ct. 2624, 110 L.Ed.2d 645 (1990).[2]

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187-88. A medical need is considered serious when delay results in an inmate's suffering "a lifelong handicap or permanent loss." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill, supra*, at 1188. Further, whether the length of the delay establishes deliberate indifference "depends on the nature

---

[2] reiterated in *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). Also cited in *McElligott*, is *Aldridge v. Montgomery*, 753 F.2d 970, 972-73, (11th. Cir. 1985) wherein a directed verdict in favor of the defendants was reversed because "officers failed to provide an ice pack and aspirin for pain caused by bleeding cut."

11

of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994). Therefore, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Plaintiff has not disputed the validity of the defendants' record of medical services provided to him while he was incarcerated at the Shelby County Jail. Officer Foster allegedly ignored plaintiff's request for medical attention on December 14, 1999. The medical record shows that defendant Watts referred the plaintiff to the health care unit on December 20, 1999. On December 20, 1999, plaintiff informed the nurse that "Saturday a . . . 'bone' came out of his rectum" and that he needed hemorrhoid surgery. However, the nurse visualized no external hemorrhoids or bleeding. Watts affidavit (Exhibit A to Document # 29, at 1). Dr. Lodewick was notified of the plaintiff's complaints and prescribed Keflex and Anusal for the plaintiff's symptoms. *Id.*

Even if defendant Foster's inaction is perceived as a denial or delay of medical attention, there is no objective evidence that plaintiff was suffering from a serious medical need. While the behavior of defendant Foster might not be commendable, the plaintiff's failure to prove that he was suffering from a serious medical need abrogates the need to measure defendant Foster's behavior against the yardstick of deliberate indifference. Therefore, the motion for summary judgment filed in behalf of defendant Foster is due to be granted with regard to plaintiff's claim of cruel and unusual punishment, and this claim is due to be dismissed.

Excessive Force

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v.*

*Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1 (1992), that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. at 6-7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson v. McMillian*, 503 U.S. at 6. (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the force used was excessive. These factors include: 1) "the need for application of force," 2) "the relationship between that need and the amount of force used," 3) "the threat 'reasonably perceived by the responsible officials,'" 4) "any efforts made to temper the severity of a forceful response," and 5) "the extent of the injury suffered by the inmate." *Id.* at 7.

However, the Court also stated: "The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort '"repugnant to the conscience of mankind."'" *Id.* at 9-10. The Court of Appeals for the Eleventh Circuit has "established the principle that the application of *de minimis* force, without more, will not support a claim for

13

excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F. 3d 1253, 1257 (11th Cir. 2000). The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one, when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

Plaintiff argues that there was no legitimate penological reason for defendant Foster to use any force or restraints on his person. Defendant Foster alleges that his restrained use force was necessary due to plaintiff's violent behavior. The factual allegations regarding the use of excessive force are clearly in dispute. It is notes that plaintiff's version of events in his amended complaint and response to the motion for summary judgment contain inconsistencies. However, assessing the credibility of the plaintiff or defendant's claims are beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1437 (11th Cir. 1991); *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1425 (11th Cir. 1990). As such, anytime there is such a divergence of accounts by the parties, summary judgment is not appropriate. Therefore, this court is effectively precluded from granting summary judgment in favor of defendant Foster, and said motion for summary judgment is due to be denied.

**FAILURE TO PROTECT**

The plaintiff also alleges that defendants Watts and Smitherman failed to protect him. The Eighth Amendment's prohibition on cruel and unusual punishments imposes upon institutional officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody. *Farmer v. Brennan*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 1393 (1984)). It is clear, however, that not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834. *Cf. Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)), *cert. denied*, 464 U.S. 932, 104 S. Ct. 335, 78 L. Ed. 2d 305 (1983); *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981) ("When officials are aware of a danger to an inmate's health and safety, however, as appears to be the case when an inmate cooperates with an official prison investigation, it does violate the constitutional proscription against cruel and unusual punishment to fail to afford that inmate reasonable protection.") It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to "objectively, 'sufficiently serious'" harm, that a constitutional violation occurs. *Farmer*, 511 U.S. at 834. *Cf. Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.), *cert. denied*, 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990) ("When officials become aware of a threat to an inmate's health and safety, the

eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "[t]he known risk of injury must be a '"strong likelihood, rather than a mere possibility."'" *Brown*, 894 F.2d at 1537 (*quoting Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference, however, requires "a state of mind more blameworthy than negligence." *Id*. at 835. For instance, and by way of example, institutional officials are not liable for a negligent failure to protect a prisoner from attack by another inmate. *Brown*, 894 F.2d at 1537. *See also Davidson v. Cannon*, 474 U.S. 344, 347, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986); *Stubbs v. Dudley*, 849 F.2d 83, 85 (2nd Cir. 1988), *cert. denied*, 489 U.S. 1034, 109 S. Ct. 1095, 103 L. Ed. 2d 230 (1989).

The Court does not find that the callous remark made by defendant Foster, in and of itself, clearly notified defendants Watts and Smitherman that Foster would cause the plaintiff serious bodily harm. Further, there is no evidence that defendant Foster had a history of violent behavior

factual allegations to show that defendants Watts and Smitherman should have known that there was a strong likelihood that defendant Foster was going cause the plaintiff serious bodily harm. Under these circumstances, the Court finds that defendants Watts and Smitherman have met their burden for relief on the motion for summary judgment. Therefore, the motion for summary judgment is due to be granted as to the failure to protect claims against defendants Watts and Smitherman.

## **OPINION**

The motion for summary judgment filed by the defendants is due to be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. the motion for summary is due to **GRANTED** as to the denial of medical care claims against defendant Foster;

2. the motion for summary judgment is due to be **DENIED** as to the excessive force claims against defendant Foster; and

3. the motion for summary judgment is due to be **GRANTED** as to the failure to protect claim against defendants Watts and Smitherman.

As such, the excessive force claim against defendant Foster is due to be referred to the magistrate judge for further proceedings consistent therewith.

An appropriate order shall be entered.

DONE this the 24th day of April, 2002.

ROBERT B. PROPST
SENIOR JUDGE